IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STEFANIE FAIR, | ) | |
|     Plaintiff, | ) | |
| v. | ) | DOCKET NO. _____ |
| | ) | |
| KEITH VELEZ, | ) | |
|     Defendant. | ) | JURY DEMAND |

## COMPLAINT

Comes now the Plaintiff, Stefanie Fair, by and through her attorney of record, and for cause of action against the Defendant Keith Velez would respectfully state as follows:

## INTRODUCTION

1. This action is brought against the Defendant pursuant to 42 U.S.C. § 1983 for deprivation of civil rights secured by the Fourth and Fourteenth Amendment to the United States Constitution.

2. On June 23, 2024, Defendant Keith Velez, a Tennessee State Trooper, initiated a traffic stop on Plaintiff Fair for a "move over" violation.

3. Plaintiff Fair stayed within her lane of travel and would not have struck Defendant Velez unless he had suddenly jumped into the lane in front of her. Nonetheless, Defendant Velez apparently became enraged by her driving, as evidenced in part by the fact that he later told another officer that "she almost fucking hit me."

4. Instead of simply writing her a traffic citation for the "move over" violation and allowing her to leave as required by state law, he instead falsely alleged she was driving while impaired. Among other things, he falsely claimed he smelled the odor of "alcoholic beverage"

coming from her car and her breath, when in fact she consumed no alcohol, she was completely sober, and there was no alcohol in the car. To the contrary, Plaintiff Fair had been eating ice cream at the restaurant where her daughter worked. She advised Defendant Velez of this, and there is video footage which confirms that fact.

5. Despite the complete absence of any evidence suggesting Plaintiff Fair had consumed alcohol or was otherwise impaired, Defendant Velez subjected her to a prolonged detainment, instructed her to complete field sobriety tests (which he administered improperly), handcuffed her, illegally induced her to consent to a blood test, took her to jail, and swore out a baseless arrest warrant for DUI. There was no legitimate law enforcement purpose for any of that.

6. Plaintiff Fair's arrest was reported by a local news organization on its website and social media accounts, resulting in the Defendant's false allegations and Plaintiff's "mug shot" being disseminated to thousands of people. To make matters worse, Plaintiff's children were "tagged" in the social media posts.

7. A blood test would later confirm Plaintiff Fair was completely sober and the DUI charge was dismissed, but the damage had already been done.

8. Defendant Velez is liable for violating Plaintiff Fair's Fourth and Fourteenth Amendment rights to be free from false arrest, malicious prosecution, and illegal search.

## PARTIES

9. Plaintiff Stefanie Fair is a citizen and resident of Williamson County, Tennessee.

10. Defendant Keith Velez was at all time material to the allegations in this Complaint an employee of the Tennessee Highway Patrol and acting in his capacity as a law enforcement officer under color of state law. He is sued in his individual capacity.

## JURISDICTION AND VENUE

11. This is an action for redress for violations of the civil rights laws of the United States and jurisdiction of this Court is therefore invoked pursuant to 28 U.S.C. § 1343(a), 42 U.S.C. § 1983, and 20 U.S.C. § 1681(a).

12. The acts and omissions and the resulting claims asserted in this Complaint occurred in and arose in Nashville, Davidson County, Tennessee, which is located in this District. Venue is thus properly laid in this Court pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

13. On June 23, 2024, Defendant Velez finished a traffic stop on the interstate and was about to get back into his vehicle when Plaintiff Fair drove past his car in the far right lane without attempting to change to a lane further away.

14. Defendant Velez entered his car and initiated a traffic stop on Plaintiff Fair for a violation of the "move over law," Tenn. Code Ann. § 55-8-132, by activating his car's lights and sirens.

15. Once Defendant Velez got behind Ms. Fair's car and she became aware she was being stopped, Plaintiff turned on her blinker to indicate her intention to pull over. She then looked for a safe place to stop.

16. Upon taking an exit ramp off the interstate and finding a place she felt more safe stopping, Plaintiff Fair pulled over on the side of the road.

17. Defendant Velez approached the passenger side of her vehicle and asked her through the open passenger side window for her license and registration, which she provided.

18. Upon receiving her documentation, Defendant Velez sarcastically asked her why she had stopped her car in that particular location.

19. As she apologized and began answering, Defendant Velez interrupted her and told her to move her vehicle forward to a grassy area "to have a conversation."

20. Plaintiff Fair did not exhibit any signs of being intoxicated during that interaction.

21. Defendant Velez had the opportunity to detect the odor of alcoholic beverage coming from the vehicle through the open window during that conversation, but he did not detect any such odor or say that he did, and indeed there was no such odor.

22. No reasonable officer would have instructed Plaintiff Fair to drive forward if that officer legitimately suspected she was impaired.

23. After they both moved forward, Defendant Velez again approached the passenger side of Plaintiff's vehicle and explained that he pulled her over because she did not move over or slow down when she passed his car.

24. Plaintiff apologized and admitted she should have pulled over.

25. Due to Plaintiff's admission and Defendant Velez's own observation of the traffic violation, the investigation of the matter giving rise to the stop was complete. Defendant Velez had no other necessary action to take besides issuing a traffic citation.

26. Instead of simply issuing a traffic citation, Defendant Velez began questioning Plaintiff about where she was coming from, to which she responded the ice cream store at which her daughter worked.

27. Defendant Velez asked when she last "had something to drink," and Plaintiff said she did not know, but it was likely "months" because she does not drink alcohol.

28. Defendant Velez responded that he smelled "the odor of alcoholic beverage coming from inside the vehicle." However, this was a false statement because there was no such odor.

29. When questioned further, Plaintiff reiterated that she does not drink alcohol and had simply consumed frozen yogurt.

30. Nonetheless, Defendant Velez ordered her out of the car to complete an investigation to determine whether she was guilty of Driving Under the Influence ("DUI"), even though he had no evidence she was impaired because she exhibited no signs of impairment and there was no odor consistent with alcohol.

31. Defendant Velez asked if someone else was in the car who might have had alcohol, and she responded in the negative.

32. Defendant Velez asked her if she would do a field sobriety test to "make sure you're okay to drive," and she responded "of course."

33. There are three primary physical standardized field sobriety tests provided in the "DWI Detection and Standardized Field Sobriety Testing" procedure published by the National Highway Traffic Safety Administration (NHTSA). Poor performance on these tests purportedly correlates with potential impairment.

34. If a test is incorrectly administered by the officer, the results are unreliable.

35. Defendant Velez administered the first test – the Horizontal Gaze Nystagmus (HGN) test – on two separate occasions and recorded that Plaintiff showed "clues" for impairment.

36. Defendant Velez incorrectly administered that first test in multiple ways on both occasions, making the purported "clues" of impairment unreliable.

37. Defendant Velez administered the second test – the "walk and turn" – and recorded Plaintiff showed four of eight possible "clues" of impairment.

38. Defendant Velez incorrectly administered that second test in multiple ways, making the purported "clues" of impairment unreliable.

39. Among other things, three of the "clues" arose from the following purported errors: "1st step started then stopped," "stepped off line to the left," and "missed heel to toe after restart." However, it is clear from the video that these actions were from attempting to smooth out gravel in front of her because Defendant Velez ordered her to take this test on an uneven surface, not because she was physically unable to walk straight. Moreover, Defendant Velez failed to give her the required instruction that she should not stop until she has completed the test. No reasonable officer could have believed Plaintiff's actions during this test reflected impairment under the totality of the circumstances.

40. Defendant Velez administered the third test – the "one leg stand" – and recorded Plaintiff showed zero possible "clues" of impairment even though he required her to perform it longer than the NHTSA guidelines require.

41. According to NHTSA, this third test is 83% reliable in determining whether drivers are impaired. Accordingly, Plaintiff's perfect performance should have made any reasonable officer conclude there was not probable cause of impairment in the totality of the circumstances.

42. Ordinarily, an officer would arrest a suspect for DUI immediately prior to the last field sobriety test since that is the final step in a DUI investigation. Instead, Defendant Velez again attempted to interrogate Plaintiff in hopes of eliciting some sort of incriminating statement or inconsistency. Again, Plaintiff reiterated she had come from the ice cream shop her daughter worked at where she had only consumed frozen yogurt and no alcohol as she does not drink alcohol.

43. Despite a complete absence of any probable cause that Plaintiff was impaired, Defendant Velez placed Plaintiff under arrest for DUI. He handcuffed her and escorted her to his patrol car.

44. In the middle of the field sobriety tests, another officer, Trooper Jason Murray, arrived and observed.

45. After Defendant Velez put Plaintiff in his patrol car, he told Trooper Murray: "She almost fucking hit me when I was wrapping up a traffic stop." He also said Plaintiff's car "reeks of alcohol."

46. Defendant Velez searched Plaintiff's car but did not find any evidence of alcoholic beverage, anything which might resemble alcoholic beverage, or anything illegal.

47. Defendant Velez told Plaintiff that he had probable cause to believe she was driving impaired and requested her consent to obtain a blood sample pursuant to the Implied Consent law, Tenn. Code Ann. § 55-10-406. He further told her that her refusal of a blood test would result in the suspension of her driver's license.

48. Having been threatened with the suspension of her driver's license, Plaintiff gave consent for a blood test to avoid that sanction.

49. Pursuant to this consent, Defendant Velez drove Plaintiff to a hospital and directed a medical provider to pierce her skin with a needle and withdraw a portion of her blood.

50. Defendant Velez then drove Plaintiff to jail and swore out an arrest warrant for DUI.

51. In his arrest warrant affidavit, Defendant Velez knowingly made several false statements, including but not limited to false allegations that he could "smell the odor of alcoholic beverage coming from inside the vehicle," that he "noticed that the odor of the

alcoholic beverage was still coming from her person" after she got out of her car, and "her eyes were watery and bloodshot." He also wrote that she "displayed clues" on two of the field sobriety tests without noting that he administered these tests correctly, and that several of the "clues" occurred when she attempted to smooth out gravel during the "walk and turn" test when Velez had failed to properly tell her she was not supposed to stop after beginning the test.

52. Defendant Velez also issued her a traffic citation for a violation of the "move over law."

53. Within hours, Plaintiff and her husband began getting phone calls demanding they pay thousands of dollars or else Plaintiff's "mug shot" and arrest details would be posted on the internet.

54. When they declined to pay such amounts, her "mug shot" and arrest details were published on the internet by "Scoop Nashville" on its website and various social media accounts.

55. These posts received significant attention. The post on Twitter has over 7,895 "views" and the post on Instagram received over 1,500 "likes" to date. There were also many derogatory comments made by persons who believed the allegations to be true.

56. These social media posts were particularly upsetting because the "Scoop Nashville" account "tagged" her children's accounts.

57. The posts were shared and republished by other sites and persons on the internet.

58. Plaintiff incurred expense from hiring a criminal defense attorney to challenge her arrest.

59. Her attorney was able to obtain video footage from the ice cream establishment confirming that she had indeed been there immediately prior to being pulled over for more than

forty-five minutes, during which time she did not consume any alcohol and showed no signs of impairment.

60. Several months after the arrest, Plaintiff learned that the Tennessee Bureau of Investigation tested her blood sample and determined it was completely negative for alcohol and drugs.

61. These negative test results confirm she was not impaired and could not have had an odor consistent with alcohol coming from her breath at the time of her arrest.

62. On November 5, 2024, the District Attorney's Office issued a "nolle prosequi" regarding both the DUI and "move over violation" charges.

63. As a direct and proximate result of Defendant Velez's actions, Plaintiff suffered injuries including but not limited to: physical and emotional pain from the handcuffs, placement in back of car, and the blood test; emotional harm from being falsely arrested and prosecuted (particularly given the initial internet publicity before she could be cleared of the charges); and financial expense in defending the baseless charge.

64. In falsely arresting, searching, and prosecuting Plaintiff as described above when he knew she was not driving while impaired, Defendant Velez was motivated by evil motive or intent, and/or had reckless or callous indifference to Plaintiff's federally protected rights.

65. While Plaintiff does not know with certainty at this time *why* Defendant Velez acted with such intent, it does not justify a constitutional violation born from apparent personal animus. Perhaps he was upset because she had committed the "move over" violation and/or failed to initially stop her car in a location he believed appropriate, as indicated by his statements regarding those matters. Perhaps it was some other unrelated reason. Regardless, his actions were objectively unreasonable and unconstitutional.

## COUNT I - FALSE ARREST

66. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

67. The actions and inactions of Defendant which resulted in Plaintiff's injuries were done under color of state law and in a manner which caused her to suffer constitutional violations. Specifically, Defendant operated to violate the right of Plaintiff not to be arrested or imprisoned without probable cause as protected by the Fourth Amendment, which has been incorporated to state action by the Fourteenth Amendment.

68. Although Plaintiff does not dispute that Defendant had probable cause to initiate a traffic stop and issue a citation for "failure to yield," Defendant lacked probable cause or reasonable suspicion to pursue any further detention or imprisonment for any other offense, including but not limited to DUI.

69. Under Tennessee law, a person is generally guilty of DUI if they drive a motor vehicle while under the influence of any intoxicant or other substance which "impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess" or while the alcohol concentration in their blood or breath is .08% or higher. Tenn. Code Ann. § 55-10-401.

70. No reasonable officer would have believed there was probable cause to detain or arrest Plaintiff for DUI based on the evidence available to Defendant at any time during the encounter.

71. If Defendant had only pursued the appropriate charge – the traffic violation – he would have simply issued a traffic citation "in lieu of arrest [and] continued custody" pursuant to

Tennessee's "cite and release" statute, Tenn. Code Ann. § 55-10-207(b). But instead, Defendant continued to detain her to perform a DUI investigation and then took her to jail.

72. The additional detention and arrest beyond issuance of a traffic citation caused Plaintiff to suffer additional liberty deprivations, including but not limited to: being detained on the side of the road for a prolonged time, undertaking field sobriety tests, being handcuffed, being placed in Defendant's car and remaining there for a prolonged time, going to the hospital and undergoing a blood test, being taken to jail, and remaining in jail for several hours.

73. As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff suffered injury from the deprivation of her civil rights as protected by the Fourth and Fourteenth Amendments and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

74. Plaintiff's injuries and losses as described above were reasonably foreseeable to Defendant as a result of Defendant's actions and inactions.

## COUNT II - MALICIOUS PROSECUTION

75. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

76. The actions and inactions of Defendant which resulted in Plaintiff's injuries were done under color of state law and in a manner which caused her to suffer constitutional violations. Specifically, Defendant operated to violate the right of Plaintiff not to be prosecuted without probable cause as protected by the Fourth Amendment, which has been incorporated to state action by the Fourteenth Amendment.

77. In order to procure a warrant for DUI, Defendant knowingly, deliberately, and/or with a reckless disregard for the truth, made false statements or omissions that created a

falsehood, and such statements or omissions were material or necessary to the finding of probable cause.

78. For example and as further explained above, Defendant falsely stated in his arrest warrant affidavit that Plaintiff:

   a. Had an odor consistent with alcohol when he knew that she did not,

   b. Had watery and bloodshot eyes when he knew that she did not,

   c. Displayed "clues" on the "HGN" test despite omitting the fact that Defendant incorrectly administered the test, and

   d. Displayed "clues" on the "walk and turn" test despite omitting the fact that Defendant incorrectly administered the test and noting that Plaintiff's only supposed missteps were for smoothing out gravel which did not suggest impairment.

79. Defendant omitted substantial exculpatory evidence in his arrest warrant affidavit, such as:

   a. Plaintiff had indeed come from an ice cream parlor as she stated, where she consumed no alcohol for approximately an hour and showed no signs of impairment,

   b. Plaintiff performed flawlessly on the "one leg stand" test, which has a reliability of 83% in assessing whether a person is impaired,

   c. Defendant found no alcohol or other intoxicating substances in Plaintiff's vehicle, and

        d. Plaintiff did not exhibit numerous signs consistent with impairment such as slurred speech, difficulty exiting her vehicle, fumbling with her driver's license, unsteady gait, confusion, and weaving or swerving while driving.

80. Defendant's acts and omission described above were objectively unreasonable. No reasonable officer would have believed there was probable cause to arrest Plaintiff for DUI under the totality of the circumstances.

81. By alleging false statements and omitting exculpatory evidence, Defendant caused the initiation of a prosecution against Plaintiff for DUI without probable cause.

82. Plaintiff received a favorable termination of the DUI case when the prosecutor issued a "nolle prosequi."

83. The prosecution for DUI caused Plaintiff a deprivation of liberty beyond that which would have resulted from only a traffic citation, including but not limited to being subject to bond conditions and having to attend a court appearance, neither of which would have been required otherwise.

84. The prosecution for DUI caused Plaintiff emotional distress beyond that which would have resulted from only a traffic citation, including but not limited having to: embarrassment from her arrest being publicized on the internet to a wide audience, stress from having to wait months before her case could be adjudicated during which time she faced the possibility of jail time and other consequences, and fear of being falsely arrested again.

85. Plaintiff was required to spend more money for legal representation due to the DUI charge than if she only faced the traffic citation.

86. As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff suffered injury from the deprivation of her civil rights as protected by the Fourth and Fourteenth Amendments and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

87. Plaintiff's injuries and losses as described above were reasonably foreseeable to Defendant as a result of Defendant's actions and inactions.

## COUNT III - ILLEGAL SEARCH

88. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

89. The actions and inactions of Defendant which resulted in Plaintiff's injuries were done under color of state law and in a manner which caused her to suffer constitutional violations. Specifically, Defendant operated to violate the right of Plaintiff not to be subject to illegal search and seizure as protected by the Fourth Amendment, which has been incorporated to state action by the Fourteenth Amendment.

90. Defendant committed a search of Plaintiff's person when he caused a needle to pierce her skin to extract blood for a blood test. Under the Fourth Amendment, this search required a warrant supported by probable cause or an exception to the search warrant requirement.

91. This blood extraction caused physical and emotional pain to Plaintiff.

92. Although Plaintiff signed an "implied consent" waiver to offer purported consent for this search, this consent was invalid and tainted because it was obtained after Plaintiff had already been illegally detained as described above.

93. The purported consent was also invalid and tainted because it was obtained based on Defendant's threat that she would have her driver's license suspended if she refused, but this

threat was invalid because Defendant did not have probable cause to believe she was in violation of an offense for which "implied consent" applies pursuant to Tenn. Code Ann. § 55-10-406. In other words, since Defendant did not have probable cause to believe that Plaintiff was driving while impaired, a court could not have suspended her driver's license had she not given consent.

94. No reasonable officer would have believed there was probable cause to invoke the "implied consent" law and tell Plaintiff that her driver's license would be suspended if she did not consent to a blood test.

95. As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff suffered injury from the deprivation of her civil rights as protected by the Fourth and Fourteenth Amendments and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

96. Plaintiff's injuries and losses as described above were reasonably foreseeable to Defendant as a result of Defendant's actions and inactions.

## PUNITIVE DAMAGES

97. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

98. The actions and omissions of Defendant Velez complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, sadistically, retaliatory, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to a substantial award of punitive damages.

## PRAYERS FOR RELIEF

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

100. That process issued to the Defendant and that he be required to answer in the time required by law.

101. That judgment be rendered in favor of the Plaintiff and against the Defendant on all causes of action asserted herein.

102. That Plaintiff be awarded those damages to which it may appear that she is entitled, including but not limited to physical and emotional pain past and future, loss of enjoyment of life, loss of reputation, reimbursement for criminal defense legal fees, and the violation of her rights guaranteed by the Fourth and Fourteenth Amendment to the Constitution of the United States.

103. That Plaintiff be awarded punitive damages against the Defendant.

104. That Plaintiff be awarded reasonable expenses including reasonable attorneys' fees and expert fees and discretionary costs pursuant to 42 U.S.C. § 1988 (b) and (c).

105. That the Plaintiff receive any other further and general relief to which it may appear that she is entitled

106. That a jury is demanded.

Respectfully submitted,

/s/ Benjamin K. Raybin
Benjamin K. Raybin (BPR #29350)
RAYBIN & WEISSMAN, P.C.
424 Church Street, Suite 2120
Nashville, Tennessee 37219
(615) 256-6666
(615) 254-4254- fax
BRaybin@nashvilletnlaw.com
*Attorney for Plaintiff*